UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HP INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>WISETA, et al.,<br><br>        Defendants. | Case No. 23-cv-00344-RFL (AGT)<br><br>**REPORT AND RECOMMENDATION**<br>Re: Dkt. No. 53 |

HP Inc. and Hewlett-Packard Development Company L.P. (together, "HP") seek default judgment against ZHAICOLOR, MOOHO, HALOFOX, ROHON, X-E-OFFICE, and IDAHOTONER (collectively, "Defaulting Defendants"). HP's motion was referred to the undersigned for a report and recommendation. That report and recommendation follows.[1]

\* \* \*

1. <u>Jurisdiction</u>: Preliminarily, the undersigned confirms that the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 1367(a), and personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Personal jurisdiction under Rule 4(k)(2) exists because HP's Lanham Act claims arise under federal law; Defaulting Defendants are not subject to general jurisdiction in any state (they reside and operate in China and other foreign

---

[1] On a motion for default judgment, the Court accepts the plaintiffs' factual allegations as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

jurisdictions, *see* Compl. ¶¶ 9, 66, 75, 83, 110, 131); and the exercise of personal jurisdiction comports with due process because each Defaulting Defendant targeted U.S. consumers through advertising and product distribution. *See id.* ¶¶ 15–17; *see also id.* ¶¶ 72, 80, 87, 114 (online reviews from U.S.-based customers); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978–85 (9th Cir. 2021) (applying Rule 4(k)(2)).

Also relevant to personal jurisdiction, HP served Defaulting Defendants with process. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (explaining that service is a prerequisite for personal jurisdiction). As permitted by the Court, HP served Defaulting Defendants via email and the Amazon messaging system. *See* Dkts. 18–24.

2. <u>Trade Dress Claim – Lanham Act</u>: Turning to HP's claims, the undersigned starts by recommending that Judge Lin enter default judgment on HP's federal trade dress claim.

HP owns a valid, protectable trade dress in the overall appearance of its packaging for ink and toner cartridges. The packaging's distinctive features include butterfly and plant-life imagery, black and bright blue or lime-green coloring, beveled side panels, and, for HP's toner packaging, a digital list of global city names fading into the background with a diagonal line dividing the white-and-black background and resembling the angle of HP's logo. *See* Compl. ¶¶ 30–45.

 

*Id.* ¶ 33 (packaging for HP Original Standard and XL Series ink cartridges).



*Id.* ¶ 43 (packaging for HP Original toner cartridges).

These designs are neither intrinsically related to ink and toner cartridges nor essential to the cartridges' use. Images of butterflies and digital lists of city names, for example, don't naturally suggest printing or serve a functional purpose. These designs instead indicate that HP is the source of the ink and toner cartridges it sells—a point HP has driven home through extensive marketing and regular use of the designs. *See id.* ¶¶ 46–51.

Defaulting Defendants sold ink and toner cartridges on e-commerce platforms such as amazon.com. *See id.* ¶¶ 65, 74, 83, 102, 110, 131. To entice consumers to purchase their products, Defaulting Defendants used digital images that mimicked HP's product packaging.

3



*Id.* ¶ 85.



*Id.* ¶ 76; *see also id.* ¶ 68 (ZHAICOLOR digital image); ¶ 105 (HALOFOX digital image); ¶ 113 (X-E-OFFICE digital image); ¶ 133 (IDAHOTONER digital image).

The similarity between HP's packaging and Defaulting Defendants' digital images is undeniable and consumers unsurprisingly have been confused. *See, e.g.*, *id.* ¶ 72 (Amazon review: "These cartridges are NOT genuine HP cartridges.") (emphasis omitted); *id.* ¶ 80 (Amazon review: "This company needs to post [its] own packaging! This image is an HP cartridge box with the HP removed. I was moving quickly and did not notice upon ordering.").

Given the design similarities and evidence of actual confusion, the Court need not

address other factors bearing on the likelihood of consumer confusion. *See Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1218 (9th Cir. 2023) ("[O]nly a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion.") (quoting another source). HP has stated a plausible trade dress infringement claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

The equities favor entering judgment for HP on this claim. Defaulting Defendants didn't answer the complaint, despite being served, making a decision on the merits impossible. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

3. <u>State Law Claims</u>: The undersigned recommends that Judge Lin also enter default judgment on HP's common law trade dress claim; HP's unfair competition claim, Cal. Bus. & Prof. Code § 17200; and HP's deceptive trade practices claim, Cal. Bus. & Prof. Code § 17500. The legal framework governing common law and Lanham Act trade dress claims "is substantially the same." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1165 (C.D. Cal. 2009) (quoting another source). Trade dress infringement also constitutes unfair competition under section 17200 and a deceptive trade practice under section 17500. *See Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016) (§ 17200); *St. Ives Lab'ys, Inc. v. Nature's Own Lab'ys*, 529 F. Supp. 347, 350 (C.D. Cal. 1981) (§ 17500).

The equities favor entering judgment for HP on these claims.

4. <u>False Advertising Claim – Lanham Act</u>: The undersigned recommends that Judge Lin deny HP's motion for default judgment on HP's false advertising claim. As HP acknowledges, an element of false advertising is a false or misleading statement. *See* Mot., Dkt. 53 at 28 (citing *Clorox Co. v. Reckitt Benckiser Grp.*, 398 F. Supp. 3d 623, 635 (N.D. Cal. 2019)). The Court hasn't identified any such statement in the complaint.

5

As alleged, Defaulting Defendants didn't say they sold HP ink and toner cartridges; rather, on e-commerce websites, they used digital images that mimicked HP's product packaging, implying that HP was the source of the cartridges being sold. Mimicking of this sort is actionable under 15 U.S.C. § 1125(a)(1)(A), as a false association (or trade dress) claim. *See* Part 2, *infra*. But HP hasn't identified authority supporting that the same conduct is actionable as false advertising under § 1125(a)(1)(B).

Claims for false association and false advertising are distinct. *See Enigma Software Grp. v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) (comparing § 1125(a)(1)(A) with § 1125(a)(1)(B)). And HP's false advertising claim appears to be "a false association claim in disguise." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017). The undersigned therefore recommends that Judge Lin decline to enter default judgment for HP on its false advertising claim.

5. <u>Permanent Injunction</u>: As a remedy for its federal trade dress claim, HP seeks a permanent injunction. *See* Compl. ¶ 152. This remedy is warranted. HP's trade dress claim is well pled, *see* Part 2, *infra*, so HP is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Defaulting Defendants haven't rebutted this presumption: they haven't even entered an appearance.

Furthermore, this is not a case where the public interest would be "disserved by a permanent injunction" or where "the balance of hardships" favors the defendants. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "It is no hardship to cease intentionally infringing someone else's trademark rights." *Diller v. Barry Driller, Inc.*, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012).

After HP initiated this lawsuit, certain Defaulting Defendants started using different

digital images to promote their ink and toner cartridges. *See* Dkt. 53-2, Chisek Decl. ¶¶ 9–15 & Ex. A. HP maintains that these new images also infringe its trade dress. But even if they don't, nothing prevents Defaulting Defendants from resuming their use of the infringing images. For this reason, too, an injunction is warranted.

As for the proposed scope of the injunction, *see* dkt. 53-5 ¶ 3, it is "narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (quoting another source). The undersigned recommends that Judge Lin enter it.

6. <u>Damages, Profits, Costs</u>: HP's complaint includes a prayer for damages, disgorgement of profits, and reimbursement of costs. *See* Compl., Prayer ¶¶ 4–5. HP isn't pursuing these forms of relief on default judgment. *See* Mot., Dkt. 53 at 30 n.3. Judge Lin thus need not consider damages, disgorgement, or costs at this time.

7. <u>Attorneys' Fees</u>: HP seeks an award of attorneys' fees. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (holding that *Octane Fitness*'s test for exceptional cases applies to Lanham Act claims).

"Courts applying the *Octane Fitness* analysis commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case 'exceptional.'" *ADG Concerns, Inc. v. Tsalevich LLC*, 2018 WL 4241967, at \*13 (N.D. Cal. Aug. 31, 2018)

(Cousins, M.J.) (collecting cases), *adopted*, 2018 WL 6615139 (N.D. Cal. Nov. 1, 2018) (White, J.). Both factors are present here. To sell their ink and toner cartridges, Defaulting Defendants willfully used digital images that were strikingly similar to HP's trade dress. Then Defaulting Defendants refused to participate in these proceedings. Defaulting Defendants' conduct was exceptional and an award of attorneys' fees is thus appropriate.

As to the amount of the award, HP seeks $79,428 in attorneys' fees. *See* Dkt. 53-1, Reinckens Decl. ¶ 7. This amount is based on 88.6 hours of billed attorney work multiplied by the hourly rates of the three attorneys who worked on the case. Counsel billed 162.5 hours in total, but because HP has moved for default judgment against only six of the eleven defendants, counsel has apportioned their time using that ratio, resulting in 88.6 hours. *See id.* ¶¶ 6–7.

HP's three attorneys were Melissa Reinckens, a partner at DLA Piper LLP who has fifteen years of intellectual property litigation experience and charged $1,075/hour; Jane Wise, a senior associate at DLA Piper LLP who has ten years of intellectual property litigation experience and charged $925/hour; and Jordan Chisek, a mid-level associate at DLA Piper LLP who has seven years of intellectual property litigation experience and charged $865/hour. *See id.* ¶¶ 2–4; Dkt. 92 at 3.

HP's attorneys billed a reasonable number of hours on this matter. Melissa Reinckens's hourly rate ($1,075/hour) was also reasonable. *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (Gilliam, J.) (finding rates ranging from $760 to $1,325 for partners "in line with prevailing rates in this district"). But HP hasn't established that Jane Wise's and Jordan Chisek's hourly rates were reasonable.

HP hasn't demonstrated that $925/hour (Wise's rate) and $865/hour (Chisek's rate)

8

were prevailing rates in the community "for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (simplified). HP cites several 2022 decisions by judges in this District, but the hourly rates approved in those cases didn't reach $925/hour for a senior associate or $865/hour for a mid-level associate. *See Facebook, Inc. v. Holper*, 2022 WL 17167958, at *15 (N.D. Cal. Sept. 27, 2022) (Spero, M.J.) (concluding that $725/hour was a reasonable rate for "a senior associate with significant practice experience"), *relevant part adopted*, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022) (Alsup, J.); *Morgan v. Sacks, Ricketts & Case LLP*, 2022 WL 1458518, at *2–3 (N.D. Cal. May 9, 2022) (Hixson, M.J.) (determining that $845.75/hour was a reasonable rate for counsel with twelve years of experience); *Sols. 30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC*, 2022 WL 1814439, at *2 (N.D. Cal. Apr. 28, 2022) (Gonzalez Rodgers, J.) (concluding that $625/hour was a reasonable rate for an associate with seven years of experience).

In support of attorneys' fees, HP also relies on the American Intellectual Property Law Association's ("AIPLA") 2022 Economic Survey Report. But the data HP provides from that report doesn't demonstrate that Wise's and Chisek's rates were reasonable. According to HP, the report identified $621/hour and $650/hour as the 2022 median and mean billing rates "for intellectual property work for firms with 101 or more attorneys." Dkt. 92 at 2. Those rates were around $200 to $300 less than Wise's and Chisek's. To be sure, Wise's and Chisek's rates could sensibly have been above the median and mean rates; but HP hasn't provided the Court with any additional data from the 2022 AIPLA report, leaving the Court to speculate about where on the report's spectrum Wise's and Chisek's rates fell.

The undersigned is mindful that with inflation, attorneys' hourly rates have been

9

rising, and that the Court's role isn't to "hold the line at a particular rate." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) (simplified). Still, the Court can't simply rely on its perception that rates have been rising. The Court relies on the parties to offer evidence of market rates. *See Camacho*, 523 F.3d at 980. Here, HP hasn't offered evidence supporting that Wise's and Chisek's rates were in line with prevailing market rates.

The undersigned recommends that Judge Lin discount Wise's and Chisek's rates. For Wise, a senior associate with ten years of experience, $725/hour is a reasonable rate. *See Holper*, 2022 WL 17167958, at *15 (concluding that $725/hour was a reasonable rate for "a senior associate with significant practice experience"). For Chisek, a mid-level associate with seven years of experience, $625/hour is a reasonable rate. *See Sols. 30 E. Eur.*, 2022 WL 1814439, at *2 (concluding that $625/hour was a reasonable rate for an associate with seven years of experience).

Multiplying those discounted rates—and partner Melissa Reinckens's rate of $1,075/hour—by the total hours billed by each attorney (10.7 hours by Reinckens, 46.8 hours by Wise, 105 hours by Chisek) results in a total of $111,058. Multiplying that total by six-elevenths, the ratio reflecting that the motion for default judgment addressed only six of the eleven defendants, results in a grand total of $60,577. The undersigned recommends that Judge Lin include in the judgment an award of $60,577 in attorneys' fees.

\* \* \*

In summary, the undersigned recommends that Judge Lin grant in part HP's motion for default judgment, granting the motion on HP's state-law claims and Lanham Act trade dress claim but denying the motion on HP's Lanham Act false advertising claim.

The undersigned recommends that Judge Lin enter HP's proposed permanent

injunction, *see* dkt. 53-5 ¶ 3, and include in the judgment an award of $60,577 in attorneys' fees, which is based on discounted hourly rates for two of HP's attorneys and is $18,851 less than the $79,428 fee award HP requested.

Any party may object to this report within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

**IT IS SO ORDERED.**

Dated: March 14, 2024

_____
Alex G. Tse
United States Magistrate Judge